IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN C. HURLBURT                                                                              PLAINTIFF

VS.                                            Civil No. 5:15-cv-05125-TLB-MEF

CAROLYN W. COLVIN,                                                                        DEFENDANT
Acting Commissioner, Social Security Administration


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


Plaintiff, John Clayton Hurlburt, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background**

Plaintiff protectively filed an application for DIB on October 30, 2006, alleging disability since October 13, 2005, due to neck problems and depression.[1] (Tr. 104) His application for DIB was initially denied on February 27, 2007, and upon reconsideration on August 23, 2007.  (Tr. 45-47, 49-50)

Thereafter, Plaintiff requested an administrative hearing (Tr. 51), and a hearing was held on November 13, 2008, before the Hon. Edward M. Starr, Administrative Law Judge ("ALJ"). (Tr.

---

[1] At the August 7, 2013 hearing before the ALJ, Plaintiff's attorney corrected the alleged onset date from October 13, 2010, to October 13, 2005.  (Tr. 449-450)

1

518-540) Plaintiff was present and represented by counsel, Evelyn Brooks. (Tr. 518) Plaintiff and a Vocational Expert ("VE"), Mr. John Massey, testified at the hearing. (Tr. 520-539) At this administrative hearing, Plaintiff was forty-one (41) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff had a ninth grade education and subsequently obtained his GED. (Tr. 450)

Following the hearing, on March 18, 2009, the ALJ entered an unfavorable decision denying Plaintiff's DIB application. (Tr. 255-262) Subsequently, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4) Thereafter, Plaintiff filed a complaint in the United States District Court, and on March 17, 2011, in a Memorandum Opinion, the case was remanded back to the ALJ. (Tr. 482-491, 493-494) Following the remand, a second administrative hearing was held on February 27, 2012. (Tr. 424-443) Plaintiff was present at this hearing and was represented by Ms. Brooks. (Tr. 424-443) Plaintiff and VE John Massey both testified at the hearing. (Tr. 424-442) At the hearing, the ALJ noted that the hearing was in regard to Plaintiff's Title II application for disability, dated October of 2006, and that he had been ordered to merge two subsequent claims for Title II and for Title XVI benefits, filed May 11, 2009, and November 30, 2010. (Tr. 424, 495) The ALJ also noted that, as instructed, he had consolidated all of the claims into one decision. (Tr. 424, 495) Following the hearing, on June 25, 2012, the ALJ entered a second unfavorable decision denying Plaintiff's request for benefits. (Tr. 400-411) On December 15, 2012, the Appeals Council remanded the case for a second time. (Tr. 390-392)

On August 7, 2013, a third administrative hearing was held. (Tr. 444-477) Plaintiff was present at this hearing and represented by Ms. Brooks. (Tr. 444) Plaintiff and VE John Massey both testified at the hearing. (Tr. 447-476) Following the hearing, on October 18, 2013, the ALJ issued an unfavorable decision denying his applications for benefits. (Tr. 889-906) In this

decision, the ALJ found Plaintiff met the insured status requirements under the Act through December 31, 2010. (Tr. 891) He also found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 13, 2005. (Tr. 891) The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, chronic low back pain syndrome, degenerative disc disease of the cervical spine, and depression, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 892)

In his decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except that he cannot crawl, climb or be exposed to heights. (Tr. 895) Plaintiff could do work with simple tasks and simple instructions with only incidental contact with the public. (Tr. 895) The ALJ further determined that Plaintiff was unable to perform his past relevant work ("PRW"). (Tr. 904) However, based on Plaintiff's RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that he could perform, such as routing clerk and marker. (Tr. 905) The ALJ then concluded Plaintiff had not been under a disability, as defined in the Act, from October 13, 2005, through the date of the decision. (Tr. 906)

Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 967-973), which was denied on March 23, 2015. (Tr. 881-884) Thereafter, on May 27, 2015, Plaintiff filed the present appeal. (Doc. 1) Both parties have filed appeal briefs (Docs. 13-14), and the case is ready for decision.

## II. Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *See Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *See Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *See Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

In the present matter, Plaintiff makes the following arguments on appeal: (1) that the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective allegations of pain; (2) that the ALJ erred in failing to consider all of Plaintiff's impairments in combination; and, (3) that the ALJ erred in finding that Plaintiff retained the RFC to perform light work. (Doc. 13, pp. 19-25) The Commissioner counters that substantial evidence supports the ALJ's credibility determination, the ALJ's consideration of all of Plaintiff's impairments in combination, and the RFC determination. (Doc. 14, pp. 6-14)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

#### A. Credibility Determination

Plaintiff argues that the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective allegations of pain. In making a credibility determination, the ALJ is required

to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *See Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors. A review of the record revealed that Plaintiff completed Function Reports on December 21, 2006, July 12, 2007, June 13, 2009, and December 10, 2010. In the first three reports, Plaintiff reported no problems with personal care and reported that he could shop in stores for food. (Tr. 123-124, 147, 558) In the first and second reports, Plaintiff reported he could prepare simple meals, clean the house, do laundry, care for his young daughters, drive a car, go out alone, and shop in stores for food. (Tr. 122-125, 146-149) In the most recent Function Report, Plaintiff claimed that, on occasion, he could still slowly prepare his own meals; go outdoors when he needed to; drive a car; pay bills, count change, handle savings account, and use a checkbook or money order; and still manage personal care with the exception of bending over to bathe and standing for long periods to feed himself. (Tr. 593-597)

6

Plaintiff also testified at the August 7, 2013, hearing that he was taking only Advil for his pain and that he was "in between" doctors. (Tr. 455) Plaintiff also stated that he was receiving Medicaid benefits; yet, during the year and a half prior to the hearing, medical records reveal Plaintiff had received very little medical care for his back and neck pain. (Tr. 462) Specifically, between January 10, 2012, and March 11, 2013, Plaintiff was seen once by Dr. Wayne Brooks of Northwest Arkansas EMG Clinic; he underwent an examination for his social security disability claim by Dr. Ted Honghiran, an orthopedist; and he underwent MRIs on his cervical, thoracic and lumbar spine. (Tr. 872, 994-995, 1009-1013) A review of the medical record reveals that the remainder of Plaintiff's medical appointments during that timeframe were for mental diagnostic evaluations with mental health professionals. (Tr. 916-921, 983-991, 1000-1006) An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment. *Edwards v. Barnhart*, 314 F.3d 964, 967-68 (8th Cir. 2003) (citing *Comstock v. Chater,* 91 F.3d 1143, 1147 (8th Cir. 1996)). Here, the ALJ concluded that if his pain was as severe as he alleged, Plaintiff would have sought regular medical treatment.

As for the objective medical evidence related to Plaintiff's complaints of disabling back pain, the ALJ noted that Plaintiff's April 20, 2010, and August 21, 2013, MRIs showed degenerative disc disease at several levels. (Tr. 620, 1009, 1011, 1013) However, Plaintiff's primary care physician, Dr. William Kendrick's office notes from November 18, 2010, reveal that after reviewing November 15, 2010, MRI results of Plaintiff's lumbar spine, none of Plaintiff's disc problems are "dangerous, surgical or compelling." (Tr. 728, 825) While these problems can cause Plaintiff pain, physical therapy was recommended as his best course of treatment.[2] (Tr. 825)

---

[2] Medical records reveal that Plaintiff attended an initial evaluation for physical therapy on May 11, 2010, and attended one physical therapy session on May 12, 2010. (Tr. 685-690). Plaintiff canceled his next therapy session that was scheduled for May 13, 2010, and was ultimately discharged from physical therapy on July 1, 2010, for failure to return. (Tr. 685, 686)

Furthermore, Dr. Ted Honghiran, orthopedic surgeon, saw Plaintiff on March 11, 2013. (Tr. 993-995) His office notes reflect that while Plaintiff walked with a limp and with the use of a cane, and had trouble "squatting down," he could dress and undress himself, he could get on his tiptoes and heels, and he could get on and off the examination table without support. (Tr. 994). While Dr. Honghiran noted that Plaintiff could have degenerative disc disease, there were "very little physical findings." (Tr. 994) Moreover, Dr. Honghiran's notes reflect that Plaintiff's level of pain was "quite excessive" and the amount of medication he had taken in the past was "quite large and out of proportion with his symptoms." (Tr. 994) Dr. Honghiran recommended Plaintiff undergo treatment by a psychiatrist and be followed on a regular basis by a psychiatrist. (Tr. 995) Additional doctors, such as Dr. Wayne Brooks of Northwest Arkansas EMG Clinic and Dr. David Cannon, a pain management specialist, both recommended conservative treatment with pain medication and steroid injections for Plaintiff's complaints of back pain. (Tr. 872-873, 875) However, a drug screen performed in January 2012 indicated Plaintiff was not truthful about the medications he was taking (Tr. 976), and Plaintiff also failed to follow through with recommended treatment by Dr. Cannon (Tr. 803). These inconsistences in Plaintiff's allegations of pain and the medical record provide sufficient support for the ALJ's decision to discredit Plaintiff's complaints of pain.

Although it is clear that Plaintiff suffers some degree of limitation, the Court finds that there are sufficient reasons in this case for determining that Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (credibility determination is entitled to deference if supported by good reasons and substantial evidence). Accordingly, the

Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B. Combination of Impairments:

Plaintiff argues the ALJ erred by failing to consider all of his impairments in combination, including any mental impairment. (Doc. 13, pp. 19-21) However, under the facts in the present case and after a thorough review of the ALJ's opinion and the record in this case, this Court finds the ALJ properly considered Plaintiff's impairments in combination.

The Social Security Act requires the ALJ to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. §§ 404.1523, 416.923. In the present action, in reviewing these claimed impairments, the ALJ stated Plaintiff "does not have an impairment or *combination* of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 892, Finding 4) (emphasis added). The ALJ also found, "after careful consideration of the entire record," the Plaintiff had the RFC to perform light work, except he cannot crawl, climb, or be exposed to heights. (Tr. 895, Finding 5) He could however, do work with simple tasks and simple instructions with only incidental contact with the public. (Tr. 895, Finding 5) The ALJ went on to state Plaintiff's RFC would not preclude him from performing other work that exists in significant numbers in the national economy. (Tr. 905, Finding 10).

These statements are sufficient under Eighth Circuit precedent to establish that the ALJ properly considered the combined effect of a claimant's impairments. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir.1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's *symptoms* ... preclude his past work as a janitor" and "[t]he '*impairments* do

9

not prevent him from performing janitorial work ..." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments). Pursuant to the holding in *Hajek*, the ALJ's opinion sufficiently indicates the ALJ properly considered the combined effect of Plaintiff's impairments, and the ALJ properly considered the severity of the combination of Plaintiff's impairments. *See Hajek*, 30 F.3d at 92.

Plaintiff also alleges that the ALJ failed to consider Plaintiff's obesity in combination with his mental and other physical impairments. The record reveals that Plaintiff was approximately 5 feet 10 inches tall and weighed between 222 and 263 pounds. (Tr. 184, 251) Plaintiff did not allege a disability based on obesity in his application for benefits, but rather claimed neck problems and depression. (Tr. 104) Medical records reveal little information regarding Plaintiff's weight and the impact of his weight on his health. Moreover, there was no testimony that Plaintiff's weight limited him. In fact, Plaintiff indicated on several occasions that he had no problem with personal care and he was still able to do many activities of daily living. (Tr. 123-125, 147-150, 558, 595-597, 989-990, 994) Based on the record as a whole, the fact that the ALJ did not discuss obesity specifically is not fatal. *See Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (obesity was not a severe impairment when the claimant did not allege in application or at hearing that obesity was disabling, there was no evidence that obesity imposed any limitations on his ability to work, and there was no testimony at the hearing or medical evidence submitted regarding any limitations imposed by weight).

### C. RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing her RFC. *See Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant

evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. §§ 404.1527(b), 916.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

Plaintiff alleges that the ALJ erred in finding that he retained the RFC to perform light work with limitations. The ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and Plaintiff's medical records when he determined the Plaintiff's RFC.

Specifically, the ALJ considered a MRI performed on April 20, 2010, of Plaintiff's cervical spine, which showed degenerative disc disease at C3-7, the findings appearing most prominent at the C4-5 level. (Tr. 620) The ALJ also considered a MRI of November 15, 2010, which showed

musculoligamentous sprain/spasm; moderately reduced height and diffuse bulges of T11-12, T12-L1; L1-L2 discs impinging upon the thecal sac and causing mild bilateral neuroforaminal narrowing; moderately reduced height and mild diffuse annular bulge of L3-4, disc impinging upon the thecal sac and causing mild bilateral neuroforaminal narrowing; and no lumbar vertebral fractures. (Tr. 728) Plaintiff underwent an additional MRI of his lumbar, thoracic and cervical spine on August 21, 2013. This more recent imaging revealed the following: mild degenerative changes involving the thoracic spine with chronic appearing disc protrusions involving the T6-7 and T12-L1 levels and no high grad central canal or neuroforaminal stenosis was identified; (Tr. 1009) mild degenerative changes involving the lumbar spine without interval development of disc herniations and stable 1 CM central disc protrusion involving the T12-L1 level which results in mild to moderate central canal stenosis; (Tr. 1011) and stable 7mm right paracentral disc protrusion involving the C3-4 levels and no high grade central canal or neuroforaminal stenosis was identified. (Tr. 1013)

For relief of his back pain, Plaintiff was treated on three occasions in 2005 by Hamilton Chiropractic Clinic. (Tr. 186) Dr. Hamilton's notes reveal that each visit provided Plaintiff with temporary relief. (Tr. 186) Because Plaintiff did not follow through with Dr. Hamilton's care recommendations, Dr. Hamilton could not offer that Plaintiff had any limitations as a result of his back pain. (Tr. 186) Plaintiff was also treated at Roberds Chiropractic on only two occasions. (Tr. 669, 673, 676)

The ALJ also considered the records from Plaintiff's primary care physician, Dr. William Kendrick, who diagnosed Plaintiff with low back and neck pain in April of 2008 and began treating him for this condition with prescriptions of Darvocet and Ultram. (Tr. 629, 630) In June of 2010, Dr. Kendrick referred Plaintiff to Dr. David Cannon, a pain management specialist. (Tr.

800) In July of 2010, Dr. Cannon recommended a steroid injection and a TENS unit for Plaintiff's back pain. (Tr. 663) In November 2010, Dr. Kendrick's notes reveal that while Plaintiff's MRI showed disc issues at several levels that could cause the Plaintiff pain, Plaintiff's MRI results were not "dangerous, surgical or compelling." (Tr. 825) Dr. Kendrick recommended physical therapy; however, Plaintiff was previously discharged from physical therapy for failure to attend. (Tr. 825)

From October of 2011 until January of 2012, Plaintiff saw Dr. Wayne Brooks for pain management related to his chronic pain, degenerative disc disease, low back pain, neck pain, depression and osteoarthritis in multiple joints. Dr. Brooks adjusted Plaintiff's medication; however, a letter from Dr. Brooks to Dr. Kendrick on January 30, 2012, indicated that a drug screen revealed that Plaintiff was not truthful with Dr. Brooks about the medication he was taking. (Tr. 974) Dr. Brooks stated that Plaintiff needed psychiatric treatment; that he should be monitored very closely if prescribed pain medication; and, that Plaintiff was welcome to return to the clinic, but he must comply with the clinic policy related to narcotics. (Tr. 975)

The ALJ also discussed and gave great weight to the opinions of several state agency physicians, including Dr. Tad Michael Morgan, who saw Plaintiff on February 5, 2007 for a consultative examination. (Tr. 254-260) Dr. Morgan diagnosed Plaintiff with chronic neck pain and depression and opined that Plaintiff had only mild limitations in his ability to lift, carry, handle and finger. (Tr. 260) Dr. Ted Honghiran, an orthopedic surgeon, also performed a consultative examination of Plaintiff. (Tr. 993-995) Dr. Honghiran's examination notes reveal that Plaintiff walked with a limp and with the use of a cane; however, Plaintiff could get on and off the examination table without support, get up on his heels and toes, and dress and undress himself. (Tr. 994) Dr. Honghiran also noted that Plaintiff's range of motion in his lumbar spine

was limited, but that he had no muscle spasms or atrophy. (Tr. 994) In his report, Dr. Honghiran concluded that Plaintiff had "very little physical findings," his level of pain was "quite excessive," the amount of medication he had previously taken was "quite large and out of proportion with his symptoms," and he should be treated by psychiatrist and followed regularly by a psychiatrist. (Tr. 995) In his physical RFC on February 20, 2007, Dr. Ronald Crow opined that Plaintiff could occasionally lift and/or carry twenty pounds; he could frequently lift and/or carry ten pounds; he could stand and/or walk and sit approximately six hours in an eight hour work day; and, he was unlimited in his ability to push and/or pull. (Tr. 264) On December 29, 2010, Dr. Sharon Keith determined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, and he could never climb ladders, ropes or scaffolds. (Tr. 838)

In addition to back pain and degenerative disk disease, Plaintiff was also diagnosed with depression. State agency physician, Dr. Ronald McInroe, performed a Mental Diagnostic Evaluation on January 25, 2007. (Tr. 194-198) Dr. McInroe diagnosed Plaintiff with depressive disorder and bereavement. (Tr. 197) Dr. McInroe's notes reflect that Plaintiff's only history of psychiatric treatment was a hospitalization for depression in 1992, which Dr. McInroe noted was as the result of a divorce. (Tr. 194-195) Dr. McInroe opined that Plaintiff's current depressive symptoms were not significant enough to affect his adaptive functioning and his symptoms would improve if effectively treated. (Tr. 195) Dr. McInroe also opined that, although he may not be able to manifest sustained attention and concentration over long periods of time, Plaintiff had the capacity to communicate and interact in a socially adequate manner. (Tr. 198) This opinion was given substantial weight by the ALJ.

The opinion of the state agency consultant, Dr. Kay M. Gale, was also given great weight. On February 26, 2007, Dr. Gale diagnosed Plaintiff with affective disorder. (Tr. 271) Based on

the evidence she reviewed, Dr. Gale determined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and to maintain attention and concentration for extended periods. (Tr. 287) As a result, Dr. Gale opined that Plaintiff had the ability to perform work where interpersonal contact was incidental to work performed, the complexity of tasks was learned and performed by rote with few variables and little judgment, and supervision was simple, direct and concrete. (Tr. 289)

The ALJ also discussed Plaintiff's brief course of treatment at Ozark Guidance Center by Dr. Mark Baltz from April 2007 through June 2007. At Plaintiff's last visit, Dr. Baltz diagnosed Plaintiff with cognitive disorder, NOS; dyssomnia, NOS; bereavement; and, possible depression. (Tr. 291) Dr. Baltz also determined that narcissistic personality disorder needed to be ruled out. (Tr. 291) Dr. Baltz noted that Plaintiff had difficulty with paying attention, concentration and short-term memory. (Tr. 300) At Plaintiff's last appointment, Dr. Baltz prescribed a trial of Strattera for Plaintiff's cognitive difficulties; however, medical records do not show that Plaintiff returned to Ozark Guidance Center for follow up treatment. (Tr. 291)

Furthermore, Dr. Terry Efird evaluated Plaintiff on August 16, 2007 and again on March 29, 2013. In Dr. Efird's 2013 examination, he diagnosed Plaintiff with major depressive disorder and anxiety. The second examination, however, showed improvements, such as Plaintiff's ability to communicate in a socially adequate, intelligible and effective manner, and a lack of difficulty with persistence. (Tr. 1003). In his most recent evaluation, Dr. Efird also found Plaintiff could perform basic cognitive tasks required for basic work-like activities and was capable of performing basic work-like tasks within a reasonable time frame. (Tr. 1003) Based on Dr. Efird's findings, the ALJ gave great weight to his opinion.

Dr. Richard Beck evaluated Plaintiff on August 11, 2011 and on December 4, 2013, and provided a Medical Source Statement Of Ability To Do Work-Related Activities on August 18, 2011. The ALJ noted Dr. Beck's findings that Plaintiff had a severe impairment in his ability to attend and sustain concentration on basis tasks, and marked limitations in the ability to understand, remember simple and detailed instructions, maintain persistence, interact with supervisors and the public, and respond to usual situations and routine changes. (Tr. 920-921) The ALJ also considered Dr. Beck's notes that Plaintiff drove to his evaluation; that he shopped regularly with his daughter; and, that he was adequately cooperative during the evaluation. (Tr. 917-918) Further, Dr. Beck observed that Plaintiff showed signs of symptom exaggeration related to narcissism, and opined that Plaintiff's "reckless lifestyle" was partly responsible for his symptoms. (Tr. 858-859)

On April 11, 2012, Dr. Cara Hartfield also performed a Mental Diagnostic Evaluation. During that evaluation, Plaintiff reported that he was able to shop with assistance, do some of the household chores, cook simple meals, help his daughter with laundry, and shower every other day. (Tr. 985-986) Dr. Hartfield noted that Plaintiff drove himself to the evaluation and that he was neatly, casually and appropriately attired, with appropriate hygiene. (Tr. 987) Dr. Hartfield concluded that Plaintiff met the criteria for narcissistic personality disorder with his display of grandiose sense of self-importance and his haughty attitude. (Tr. 989) Dr. Hartfield also concluded that Plaintiff's narcissism was driving all of his symptoms with the exception of his memory disorder. (Tr. 989) Dr. Hartfield opined that Plaintiff's capacity to communicate in an intelligible and effective manner and his capacity to cope with typical mental/cognitive demands of basic work-like tasks were only mildly impacted. (Tr. 990) While Dr. Hartfield found Plaintiff's ability to complete work-like tasks within an acceptable timeframe to be markedly

limited, she found Plaintiff's ability to sustain persistence in completing tasks was unaffected. (Tr. 990) Furthermore, Plaintiff also showed no hesitancy or fear of failure during the evaluation. (Tr. 990) The ALJ determined that Dr. Hartfield's opinion was entitled to great weight.

Considering all of the doctors' findings together, the ALJ resolved any conflicts in the medical opinions and concluded that their findings were consistent with the RFC determination. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

## IV. Conclusion

Based on the foregoing, the undersigned recommends affirming the ALJ's decision and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of May, 2016.

/s/ Mark E. Ford
HONORABLE MARK. E. FORD
UNITED STATES MAGISTRATE JUDGE

17